## WHEELING STEEL CORPORATION v. AMERICAN ROLLING MILL CO.

### et al.

### No. 6894.

Circuit Court of Appeals, Sixth Circuit.
March 6, 1936.

John Weld Peck, of Cincinnati, Ohio, and W. J. Blenko, of Pittsburgh, Pa. (Peck, Shaffer & Williams, of Cincinnati, Ohio, and Byrnes, Stebbins & Blenko, of Pittsburgh, Pa., on the brief), for appellant.

Marston Allen, of Cincinnati, Ohio (Allen & Allen, of Cincinnati, Ohio, on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

We are upon this appeal concerned with a bill for discovery filed by the defendant in a law action now pending in another jurisdiction. Discovery is sought on the ground that it is necessary to enable the present plaintiff to properly plead its defenses at law, which it has not yet done. The court below sustained a motion to dismiss, and from a decree dismissing the bill as premature appeal was taken.

The American Rolling Mill Company, hereinafter referred to as Armco, brought a law action against Wheeling in the federal District Court of Delaware. It sought recovery of royalties alleged to be due under a license permitting use of certain patents owned by it. Wheeling says it cannot plead without the benefit of discovery of facts resting within the knowledge and control of Armco; and of Hook and Verity, its officers. It alleges that it is advised it has, or may have, certain defenses. Upon information and belief it avers that certain representations made by Armco in the procuring of the license agreement were false, and that the agreement is therefore void, or at its option voidable, because of fraud. It avers upon information and belief that Armco is itself in default, in that it has not in good faith endeavored to enforce and maintain validity of the patents recited in the license agreement; that Armco has breached the agreement in granting more favorable terms to other licensees as to royalty without extending the same to Wheeling; that Armco without Wheeling's consent has altered and amended certain of its license agreements with others in such manner as to constitute either a fraud in the procurement of the agreement with Wheeling or a violation of its terms; and that Armco has not maintained the price schedule which it imposed upon Wheeling, though required by the license to do so. Finally, it avers that it is entitled to recoupment or set-off for all moneys paid as royalties under the agreement.

It propounds 314 interrogatories. They seek disclosure of supposed evidentiary facts supporting each of the defenses. They require production of all license agreements with third persons covering the use of each of the patents recited in its own license; of any and all amendments to such agreements or side agreements. They seek the motive and purpose of such side agreements, if any. They inquire separately into agreements existing prior to the execution of the Wheeling license and into those entered into after the execution of the Wheeling license. They require the production of all correspondence in respect to license agreements. They require what can be but an opinion as to whether a certain rolling mill installed and operated by the Allegheny Steel Company is substantially as set forth in an exhibit attached to the interrogatories; whether the Allegheny Steel Company has procured a license to operate such mill, and, if so, upon what royalty; whether it was inspected by Armco's agents, and, if so, the names of the representatives who made the inspection, the date when it was made, and the witnesses who were present; whether Armco had ever claimed infringement by the Allegheny Steel Company, and, if so, of what patents and by what representative and in the presence of what witnesses; whether suit has been brought for such infringement, and, if not, whether upon advice of counsel, with the reasons of counsel in support of such advice. They inquire as to specific licenses to the Youngstown Sheet & Tube Company, and ask for a complete statement of payments by Youngstown and tonnage on which such payments were based, whether refunds were made to Youngstown and how, with copies of all correspondence and writings in relation thereto, and whether refunds were made by Armco itself or by the personal checks of its officers or agents. Separate series of interrogatories relate to supposed dealings with Weirtown Steel Company, Great Lakes Steel Corporation, Otis Steel Company, Republic Iron & Steel Company, Gulf States Steel Corporation, Inland Steel Company, and United States Steel Corporation. Others inquire as to the value placed by Armco on certain patents purchased from Republic Steel Corporation, and as to the actual consideration paid therefor, with all correspondence and canceled checks relating to the transaction. Still others seek production of all financial statements published by Armco since May 29, 1931, statement as to which of its patents or patent applications Armco con-

siders to have a dominating character in the continuous manufacture of wide-strip metal, and all correspondence bearing thereon. Inquiry is made into the sale of various steel products, with the names of purchasers, their addresses, the thickness of the material sold, the processing to which it was subjected, prices and the terms of sale, including discounts, rebates, refunds, and terms of shipment, with copies of all contracts, agreements, letters, invoices, or writings bearing thereon, and the same as to prospective purchasers, and so on. We have neither intended to nor made an exhaustive analysis of the plaintiff's interrogatories. Enough has been shown, however, to indicate their scope and possible bearing upon the plaintiff's suggested defenses to the law action.

■ While equity favors discovery as an aid to simplifying the issues and expediting the trial of suits at law, and while the trend of modern legislation in respect to the examination of documents and records prior to trial has had the same objective, yet discovery is still recognized as an extraordinary remedy, and the necessity of resort thereto must be established. Durant v. Goss, 12 F.(2d) 682 (C.C.A.6); Keith v. Endicott Johnson Corporation, 75 F.(2d) 249 (C.C.A.2); Lansing B. Warner, Inc., v. Lehigh Valley R. Co., 75 F.(2d) 483, 485 (C.C.A.2). To-day the remedy exists chiefly, if not wholly, to give facility to proof. Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 693, 53 S.Ct. 736, 738, 77 L.Ed. 1449, 88 A.L.R. 496; Lansing B. Warner, Inc., v. Lehigh Valley R. Co., supra. As was said in the latter case: "The plaintiff must of course show that the answers will be relevant to the issues at law, and that will appear from inspection of the pleadings in that action. Under modern conditions he must do more; that is, show that without them he cannot safely go to trial. That too will in most cases appear from an inspection of the pleadings in the action at law." Even so, the remedy will not be granted as of course, and protection will be given to the adversary against impertinent intrusion. Sinclair Refining Co. v. Jenkins Petroleum Process Co., supra; Wigram, Points in the Law of Discovery, § 115. As was said in the Jenkins Case: "The court may decline to open the defendant's records to the scrutiny of a competitor posing as a suitor, if the suit has been begun without prob-

able cause or as an instrument of malice. It is all a matter of discretion."

■ If the foregoing observations are sound, and we think they are, inquiry at once suggests itself as to criteria by which the necessity of a bill for discovery or the relevance of interrogatories may be tested and judicial discretion exercised. Where the law case is at issue, the substantial nature of the controversy may be ascertained from an examination of the pleadings therein, the necessity for discovery appraised, and its proper limits defined. This is not to say that discovery may never lie in advance of pleading, and we do not interpret Lansing B. Warner, Inc., v. Lehigh Valley R. Co. as necessarily so holding. It may be that the bill for discovery itself will supply the required data where pleadings are not available. Where, however, pleadings in the law case are not extant, and the bill for discovery as illuminated by the interrogatories seeks license to roam substantially the whole field of the defendant's activities, we are unable to see how discretion may be exercised in determining whether discovery is imperative, or, if so, whether it be confined to matters that are relevant.

■ The plaintiff here commits itself to nothing. Sued at law, it proposes to defend—not on any specific ground, but on nearly all conceivable grounds—fraud in the inducement of the contract, fraud committed after its execution, breach in respect to each of the several provisions of the contract, breach in respect to each of such provisions as it controls defendant's relations with each of numerous supposed licensees, breach in respect to failure to protect patents involving considerations of good faith, business judgment and expertness of counsel, and upon a final defense of set-off and recoupment repugnant to many others. In fact, it would be somewhat difficult to compile a more complete catalogue of defenses possible to a suit upon contract. Moreover, there is no assurance that the plaintiff will avail itself of any of these defenses. Discovery as to them may be wholly fruitless. The interrogatories are of sufficient breadth and detail to unearth, if they exist, defenses beyond the present ingenuity of counsel to suggest and so not yet asserted by the plaintiff. To sum it up, the proceeding appears to be what in General Film Co. v. Sampliner, 232 F. 95, we designated "a fishing expedition,"

or what the court in the Second Circuit called in Lansing B. Warner, Inc., v. Lehigh Valley R. Co., supra, "a burrowing into the defendant's case which ought not to be allowed."

Discovery is here directed to evidentiary rather than to ultimate facts, a course condemned in the Endicott Johnson Case; to securing the names of witnesses, likewise condemned; to the ascertainment of opinion, clearly beyond the province of discovery; to facts within the plaintiff's own knowledge as to which it may not have discovery merely for the purpose of gaining an admission to save the burden of offering proof (Keith v. Endicott Johnson Corporation, supra; Durant v. Goss, supra); and as to transactions which are not averred, even upon information and belief, to have taken place. If it be suggested that the relevance and pertinency of interrogatories may be tested only at a hearing upon objections thereto, and not upon a motion to dismiss the bill, the range of the suggested defenses, their conceded inconsistency, and the lack of precision in their averment immediately demonstrates the impossibility of an intelligent exercise of the judicial function.

Equity will guard against oppression even while exercising a salutary equitable power. It will not apply a remedy worse than the ills it seeks to cure. It will always seek to strike a balance of convenience as between litigants. A harassing inquisition is beyond the province of discovery, and· to decree it may compel a choice between yielding to it or abandoning a just cause as the lesser of two evils. Equity Rule 58 (28 U.S.C.A. following section 723) [1] may or may not apply to discovery in aid of the prosecution or defense of a suit at law. There is controversy about it. Cf. Pro. H. Wagner & Adler Co. v. Mali, 74 F.(2d) 666 (C.C.A.2); Lansing B. Warner, Inc., v. Lehigh Valley R. Co., supra. Contra, Bradford v. Indiana Harbor Belt R. Co., 300 F. 78 (C.C.A. 7). We do not decide the point. It is sufficient for our purpose that it points to the need of a commitment by litigants to def-: inite issues as an aid in determining necessity for discovery and in fixing its limits.

"When this necessity is made out with reasonable certainty, a bill in equity is maintainable to give him what he [the litigant] needs. Equity Rule 58 (28 U.S.C.A. following section 723)." Sinclair Refining Co. v. Jenkins Petroleum Process Co., supra.

The decree below is affirmed.

---

[1] The plaintiff at any time after filing the bill and not later than twenty-one days after the joinder of issue, and the defendant at any time after filing his answer and not later than twenty-one days after the joinder of issue * * * may file interrogatories.